IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Cv. No. 04-02643-SHM<br>Cr. No. 01-20325-SHM |
| CURTIS L. BYRD, JR., | |
| Defendant. | |

---

ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

Defendant Curtis L. Byrd, Jr., has filed a Motion To Set Aside, Correct, Or Vacate Sentence pursuant to 28 U.S.C. § 2255, as well as a subsequent "Supplement" and separate "Amendment" to the motion. For the reasons stated below, Defendant's motion is DENIED.

**I. BACKGROUND**

On December 18, 2001, a federal grand jury in the Western District of Tennessee returned a nine-count multi-defendant Indictment charging Defendant specifically with four counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, and two counts of making a materially false statement for the purpose of influencing a financial institution, in violation of 18 U.S.C. § 1014. Count Three charged Defendant with causing a fraudulent loan application and supporting documents, which he prepared, to be mailed to Southeastern Mortgage in Nashville, Tennessee, on behalf of his client, Ms. Nicole

Felts.  On August 8, 2002, Defendant entered a plea of guilty to the mail fraud charge alleged in Count Three.  In exchange, the government moved the Court to dismiss the remaining counts of the Indictment.  On January 17, 2003, the Court sentenced Defendant to eighteen months incarceration, three years of supervised release, a $20,000.00 fine, and a $100.00 special assessment.  Defendant timely appealed his sentence, contending that the Court's use of the 2002 edition of the Sentencing Guidelines Manual rather than the 1998 edition violated his rights under the Ex Post Facto Clause of the Constitution.  The Sixth Circuit determined that the Court's reliance on the 2002 edition of the Guidelines was plain error and thus vacated Defendant's sentence and remanded for sentencing pursuant to the 1998 edition.  <u>United States v. Johnson</u>, 103 Fed.Appx. 866, 874-75 (6th Cir. 2004).  On September 10, 2004, the Court re-sentenced Defendant, imposing ten months incarceration, which Defendant had already served, two years of supervised release, eight months of which were credited to Defendant based on time already served, a $1,000.00 fine, and the $100.00 assessment.

On August, 18, 2004, during the pendency of Defendant's re-sentencing, Defendant filed the instant motion to vacate the sentence already vacated by the Court of Appeals.  On August 25, 2004, again prior to his re-sentencing, Defendant filed a "Supplement" to his § 2255 motion, purporting to offer further evidence in support of one of his claims alleging a fatal deficiency in the Indictment.  Finally, on September 14, 2004, Defendant filed an "Amendment" to the pending § 2255 motion, asking that the Court designate his § 2255

2

motion a "Petition for Writ of Error Coram Nobis" if necessary to ensure its cognizability in light of his having already served the term of incarceration imposed at re-sentencing.  Defendant also raised a separate claim attacking his conviction based on allegedly improper venue and ineffectiveness of counsel for failing to challenge venue.  Defendant did not appeal his amended sentence.

## II. CONSTRUCTION OF DEFENDANT'S MOTION

As a preliminary matter, the Court will address Defendant's concern that his motion might properly be construed as a petition for Writ of Error *Coram Nobis* in light of his having already served the term of incarceration imposed at re-sentencing.  The Sixth Circuit has addressed the nature of *coram nobis* relief and set forth a test governing the applicability of the remedy:

> *Coram nobis* is an extraordinary writ, used only to review errors of the most fundamental character - *e.g.*, errors rendering the proceedings themselves invalid.  To be entitled to relief, the petitioner must demonstrate (1) an error of fact; (2) unknown at the time of trial; (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceedings if it had been known.  In addition, the writ of *coram nobis* is available only "when a § 2255 motion is unavailable - generally, when the petitioner has served his sentence completely and thus is no longer 'in custody' as required for § 2255 relief."

United States v. Johnson, 237 F.3d 751, 755 (6th Cir. 2001)(citations omitted).  Thus, the question of whether or not a § 2255 motion was available to Defendant at the time he filed his motion is determinative.  Although Defendant had already served the term of incarceration imposed at re-sentencing, he was subject to the term of supervised release imposed by the Court.  "A defendant serving a term of supervised release is 'in custody' for the purposes of § 2255."

United States v. Zack, 173 F.3d 431 (Table) at *1 (6th Cir. 1999).
Because Defendant had sixteen months of supervised release left to
serve after re-sentencing, he was "in custody" for purposes of §
2255, and was therefore ineligible for coram nobis relief.  That
Defendant completed his sentence of supervised release during the
pendency of this motion does not convert the § 2255 motion into a
petition for Writ of Error Coram Nobis.  Hampton v. United States,
191 F.3d 695, 697 (6th Cir. 1999)("Where a prisoner's sentence is not
fully expired at the time of filing, but expires during the
litigation of the collateral attack, the proceeding does not become
moot.").  Accordingly, the Court shall construe Defendant's motion
consistent with the form in which it was brought before the Court -
a motion to vacate pursuant to § 2255.

**III. CLAIMS RAISED IN DEFENDANT'S MOTION**

Defendant raises the following claims in this collateral attack
on his conviction:

a. Claim I: Lack of Knowledge or Proof of Knowledge [as
to the subject mailing or even the discrete
fraudulent scheme pursuant to which the mail was
used];

b. Claim II: The Court Did Not Make the Required Factual
Findings to Convict Byrd on Count 3 and Did Not
Ensure He Understood the Nature of the Charges;

c. Claim III: On It's Face, Count 3 Fails to Allege an
Offense Because of the Failure to Adequately Allege
a Loss of Property;

d. Claim IV: There Was No Scheme to Defraud as Required
By 18:USC 1341 [sic], and No Intent to Commit a
Crime, Thus No Federal Jurisdiction;

e. Claim V: On It's Face, Count 3 Fails to Allege an
Offense Because of the Multiple Modes of Mailing
Alleged Which Renders the Plea Involuntary and
Without Understanding of the Nature of the Charges;

4

f.  Claim VI: There Was No Factual Basis for Conviction Because of the Lack of Allegations or Proof of Materiality [as to the false information provided by Defendant to the lender];

g.  Claim VII: Trial Counsel's Assistance was Ineffective for Not Investigating the Facts to Ensure Byrd was Actually Guilty of this Crime, Urging Him to Plead Guilty While Not Preparing for Trial Which Made His Plea Involuntary, and Informing Byrd that He Could Not Ask to Withdraw His Plea; and

h.  Claim VIII: Lack of Jurisdiction Because of Improper Venue and Trial Counsel's Assistance Was Ineffective for Not Challenging Venue for Count 3 or Informing Byrd of the Right to Have His Case Tried in the Venue the Crime Was Committed

To simplify disposition of this matter, the Court will group Defendant's claims into the following categories: claims challenging jurisdiction and the sufficiency of the Indictment, claims challenging the knowing, intelligent, and voluntary character of Defendant's guilty plea, and claims based on ineffective assistance of counsel.

## IV. ANALYSIS

### A. Claims Challenging Jurisdiction and the Indictment

#### 1. Jurisdiction

Defendant's only discernible claim challenging the actual jurisdiction of this Court is his contention that the Western District of Tennessee was an improper venue in which to prosecute him for the conduct set forth in the Indictment. Defendant argues that "[t]here is no evidence or even an allegation that the alleged mailing originated in the Western District of Tennessee, rather the indictment alleges venue positively in the Middle District of Tennessee." Amendment to Motion to Vacate, Correct, or Set Aside Sentence, doc. no. 3 at 2. Defendant's contention that venue in the

Western District was improper is based on his belief that the
government was required to demonstrate that the mailing alleged in
Count Three occurred in Memphis, Tennessee, rather than Arkansas or
Mississippi.   However, Defendant continues, because "there is
unrefuttable [sic] evidence where it was received" in Nashville,
venue could only have properly been had in the Middle District of
Tennessee. Id. at 3.

The Indictment does not "allege[] venue positively in the Middle
District of Tennessee." In fact, the Indictment expressly alleges
that Defendant's culpable conduct occurred in the Western District.
Indictment, no. 01-20325, doc. no. 1 at ¶¶ 1 and 3. Moreover,
"allegations of improper venue do not raise a question of
jurisdiction" and, hence, cannot form the basis for a motion pursuant
to § 2255. Williams v. United States, 582 F.2d 1039, 1041-42 (6th
Cir. 1978). To the extent Petitioner alleges ineffectiveness based
on counsel's failure to challenge the purportedly improper venue, the
Court will address that claim in its discussion of Defendant's other
ineffectiveness claims. Defendant's challenge to jurisdiction based
on allegations of improper venue is DENIED.

### 2. Sufficiency of the Indictment

Defendant challenges the sufficiency of the Indictment, alleging
that: 1) the Indictment fails to specify the nature of the property
that was the object of the fraudulent scheme attributed to Defendant
(Claim 3); and 2) the Indictment improperly alleges a use of both the
postal service and a private interstate carrier (Claim 5). Defendant
waived any defective indictment defense, even if it could have been
asserted, by entering his guilty plea. The general rule is that the

6

"sufficiency of an indictment cannot be questioned on a motion under Section 2255 unless it is so defective on its face as to not charge an offense under any reasonable construction." Eisner v. United States, 351 F.2d 55, 56 (6th Cir. 1965).   Count Three of the Indictment suffices to state an offense under the mail fraud statute. Thus, this Court was not deprived of jurisdiction because of any perceived deficiency of the Indictment.   Defendant's claims challenging the sufficiency of the Indictment are DENIED.

**B. Claims Challenging the Voluntariness of Defendant's Plea**

Defendant alleges several claims related to the purportedly involuntary and uninformed nature of his guilty plea as well as the alleged lack of a factual basis for his guilty plea.  Because a claim "that the district court failed to find a factual basis to support [a] guilty plea . . . is a claim that the plea was not knowing and voluntary," United States v. Tisdale, 127 Fed. Appx. 438, 440 (10th Cir. 2005), the Court will consider claims asserting a lack of a factual basis for the conviction in conjunction with Defendant's more straightforward allegations that his plea was involuntary.

The Court construes the following claims as challenges to the voluntariness of Defendant's plea:

a.   Claim I, Part A: Defendant had no knowledge, nor was it foreseeable, that any mailing to Southeastern Mortgage would occur;

b.   Claim I, Part B: Defendant had no knowledge that the local loan officer he dealt with would involve Southeastern Mortgage or mail that entity any of the fraudulent documents procured by Defendant;

c.   Claim II: The Court failed to make the required factual findings to sustain Defendant's guilty plea and failed to ensure that Defendant understood the charges to which he pled guilty;

7

d.  Claim IV: The fraudulent documents generated by Defendant were not actually mailed to Southeastern Mortgage, but remained in the office to which he hand delivered them;

e.  Claim IV: There was no fraudulent scheme given that "the victim has the opportunity to learn the truth . . . but chooses to remain 'willfully blind' to the truth;"

f.  Claim V: The government failed to prove that either the postal service or a private interstate carrier was used in furtherance of the scheme;

g.  Claim VI: There was no proof of the materiality of the fraudulent representations made by Defendant because the government failed to show whether the victim relied on the fraudulent documents when approving the loan for Ms. Felts.

Claim Two, to the extent it contends that the Court failed to satisfy the mandate of Fed. R. Crim. P. 11(c) when accepting Defendant's guilty plea, is without merit. Defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). The "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Id. At Defendant's plea colloquy, the Court prefaced its remarks by informing Defendant that he should seek clarification from the Court or confer with his attorney when necessary to ensure his understanding of the proceedings. Transcript, Change of Plea Hearing, doc. no. 162 at 3. After the Court meticulously reviewed the relevant portions of the Indictment, Defendant unequivocally indicated to the Court that he understood the charges to which he was pleading. Id. at 10. Finally, at the conclusion of the government's summary of its proof, the Court allowed Defendant to respond to the government in order to

8

address any discrepancy between his understanding of the charges and the government's proof. Id. at 24. Any allegation that the Court did not satisfy the mandate of Rule 11 is incredible in light of the record of Defendant's plea colloquy. Accordingly, Claim Two is DENIED.

The Court interprets the remaining Claims, One, Four, Five, and Six, as challenges to the voluntariness of Defendant's guilty plea based on his assertion that no factual basis exists for a finding of mail fraud. These claims appear to be procedurally barred under alternative theories. First, to the extent they challenge the sufficiency of the government's proof prior to the entry of the guilty plea, i.e. Claims Five and Six, the claims were waived by Defendant's plea of guilty. United States v. Manni, 810 F.2d 80, 84 (6th Cir. 1987). Second, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, 621 (1998). Defendant did not challenge the voluntariness of his plea on appeal. Thus, his present claims about the voluntariness of his plea are procedurally defaulted.

A § 2255 movant may proceed with an otherwise defaulted claim under two circumstances: (1) the movant demonstrates cause for the default and prejudice resulting from the court's refusal to consider the claim; or (2) the movant has demonstrated actual innocence of the crime to which he pled. Id. at 622. Ineffective assistance of counsel can constitute cause for a default. Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993). To the extent any of Defendant's claims concerning the voluntariness of his plea are

9

alleged to have been defaulted due to the ineffective assistance of counsel, the Court will consider those claims when considering Defendant's other ineffectiveness claims.

In asserting the lack of a factual basis for his guilty plea, Defendant has generally alleged that he cannot be guilty of mail fraud as charged in Count Three of the Indictment. Conceivably, therefore, Defendant asserts his actual innocence of the offense of mail fraud. Thus, the Court must determine whether any evidence of Defendant's innocence suffices to rebut the evidence of Defendant's guilt in the record. "To establish actual innocence, [Defendant] must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at 622 (quotations omitted). This Court is to examine "all the evidence in the record [to] determine whether – as a matter of law – the Government could establish that [Defendant] violated the [mail fraud] statute." Waucaush v. United States, 380 F.3d 251, 254 (6th Cir. 2004). Although Defendant generally concedes that he did conspire to provide false and misleading information to ensure that Ms. Felts would receive approval for a mortgage loan, "[a]ctual innocence does not mean that [Defendant] must be innocent of all bad deeds. The question before [the Court] is whether [Defendant] is actually innocent of violating the [mail fraud statute]." Id. To make that determination, the Court must revisit the government's proof at Defendant's change of plea and sentencing hearings, as well as any other proof evident in the record.

10

The following exchange occurred at Defendant's plea colloquy:

THE COURT: All right, Ms. Berry. What would the government's proof have been if this matter had gone to trial?

MS. BERRY: Your Honor, if this matter had gone to trial, the government would have shown that on or about May 27th of the year 2000, a Uniform Residential Loan Application and supporting documents were submitted on behalf of Nicole Felts to the National Bank of Commerce and its subsidiaries.

THE COURT: Is Southeastern Mortgage a subsidiary of National Bank of Commerce?

MS. BERRY: Yes, Your Honor, it is.

THE COURT: All right. Thanks.

MS. BERRY: The Uniform Residential Loan Application listed made several false statements, including the fact that the defendant [Ms. Felts, presumably] was single and she resided at 6829 Martha's Point, and that she was employed by Southeast Investments Corporation on Knight Arnold.
The Uniform Residential Loan Application also included supporting documents, such as a letter from MLG&W that was signed by Fred Doss, the General Manager of Southeast Investment Corporation, on or about July 12th of the year 2000.
The United States would have also shown that Nicole Felts would have testified that she paid the defendant thirteen hundred dollars in order to assist her in purchasing her residence. And that the defendant did not – or that the defendant [again, Ms. Felts, presumably] did not work at Southeast Investments. The MLG&W letter was fraudulent, as was the request for verification of employment, and that she was married.
The thirteen hundred dollars, in addition to a two hundred dollar check from Nicole Felts for earnest money was deposited into the savings account of Southeast Investment Corporation.
The United States would have also provided evidence that Southeast Investment Corporation on Knight Arnold Road was a business operated by the defendant and other individuals. And that is what the government's proof would have been. Oh, and I'm sorry, and the documents were mailed to NBC and it's [sic] subsidiaries, including Southeastern Corporation.

THE COURT: In Nashville?

MS. BERRY: In Nashville.

11

THE COURT: All right.  Mr. Byrd, you have heard the statement by the Assistant United States Attorney as to your conduct in this case, and as to the evidence they would have presented at trial.  Is that correct as to your involvement with this matter?

THE DEFENDANT: Your Honor, I personally did not mail anything to NBC.  I wanted to put that on the record.  And the supporting documents, some of them I did have involvement with and some of them I didn't have anything to do with mailing the letters, and the letter from Goldsmith's, or whatever.  I didn't make those.

THE COURT: You say -

        (Counsel conferring with defendant)
THE DEFENDANT: I did know that the - even though I didn't personally create the documents or come up with the information, I did submit them to NBC.

THE COURT: You say you came up with information.  Does that mean that you participated in the creation of the documents?

THE DEFENDANT: Yes, sir.

THE COURT: And you submitted those documents to the lending authority?

THE DEFENDANT: Yes sir, I delivered them personally to the manager.

THE COURT: You delivered them in person.  And as to the mail - the letter that was mailed, you didn't put that in the mail.  Did you cause someone else to put it in the mail?

THE DEFENDANT: Yes, sir.

THE COURT: You asked somebody to do it?

THE DEFENDANT: No.  I gave it to the young lady to mail it.  After the loan closed, I presume she mailed it to whoever they send the -

THE COURT: You caused it to be put in the mail?

THE DEFENDANT: Yes, sir.

THE COURT: All right.  I believe we are there.

MS. BERRY: Nothing further from the government.

12

THE COURT: All right.  Anything further you wish to say, Mr. Byrd?

THE DEFENDANT: No, sir.

Transcript, Change of Plea Hearing, doc. no. 162 at 21-24.  From the foregoing, the factual basis for Defendant's mail fraud conviction was established and acknowledged by Defendant at his plea colloquy. Defendant entered into a scheme to defraud a lending authority and the mail, relied upon in forwarding the fraudulent loan application and supporting documents to the lender, was used to further the scheme.

Defendant's present claims suggesting his actual innocence of mail fraud can be distilled into four basic premises:

1.  he had no knowledge, nor could he have reasonably foreseen, that the subject mailing would occur (Claim 1);

2.  the fraudulent documents prepared by Defendant were never actually mailed to the lending authority (Claim 4);

3.  no fraudulent scheme exists where the victim and others could have discovered the fraudulent nature of the documents prepared by Defendant (Claim 4); and

4.  there was no fraudulent scheme involving Defendant because the fraudulent documents he created were not material to the victim's decision to approve Ms. Felts's loan (Claim 6).

Defendant's contention that the fraudulent documents he prepared were never actually mailed is incredible in light of the record.  The Indictment plainly alleges that the documents were mailed, and the government reiterated as much when summarizing its proof at Defendant's plea colloquy.  Defendant presents nothing more than the conclusory allegation that "the handwritten application and supporting documents by Byrd remained with NBC mortgage and were

13

never mailed." Motion, doc. no. 1 at 13. Because this allegation is unsupported by the record and contradicts the previous findings of fact which Defendant acknowledged upon entering his plea,[1] it is subject to summary dismissal. <u>Blackledge</u>, 431 U.S. at 74.

Defendant also contends that "there is no scheme to defraud when the victim has the opportunity to learn the truth (especially when it has procedures in place to do so), but chooses to remain 'willfully blind' to the truth." Motion, doc. no. 1 at 13. He further asserts that the fraudulent documents he submitted were not shown to be material to the victim's decision to approve Ms. Felts's loan application. Defendant has not demonstrated that the victim was not entitled to rely on the veracity of the documents he produced or that the victim could have uncovered his fraud through normal channels of inquiry. Indeed, it would make little sense for Defendant to generate a fraudulent loan application and supporting documents, as he admits to have done, if he did not intend to fraudulently induce the loan and did not intend for the lender to rely on the documents when considering whether to approve the loan. Accordingly, the existence of the fraudulent scheme and the materiality of the documents Defendant created are abundantly established by the record.

Defendant maintains that he could not have known of or foreseen the mailing to Southeastern Mortgage because he was involved only in restoring Ms. Felts's credit and was therefore a novice concerning

---

[1]     Indeed, Defendant's contention that no mailing occurred also contradicts his own admission, in his "Amendment" to his § 2255 motion, that "there is unrefuttable [sic] evidence where [the subject mailing] was received." Amendment, doc. no. 3 at 2.

mortgage matters.  He also suggests that no mailing was foreseeable because he had never heard of Southeastern Mortgage and assumed that the local office to which he allegedly hand-delivered the documents would handle the loan.  Motion, doc. no. 1 at 3-4.  Defendant attempts to distinguish his plea colloquy admission that he caused the subject mailing by asserting that the only mailing which he foresaw would have been a mailing to the lender's record-keepers after the loan was approved and the fraudulent scheme completed.  Id. at 4.  Nothing in the record supports that contention and nothing other than the self-serving allegations of Defendant would indicate his level of sophistication in mortgage matters.  At least one federal appellate court has found evidence of the routine practice of mortgage companies in mailing loan application supporting documents for various reasons germane to the loan's approval sufficient to conclude that a mailing is reasonably foreseeable upon the submission of those documents.  See United States v. Hitchens, 62 Fed. Appx. 417, 419 (3d Cir. 2002).  The Court agrees.  It is eminently reasonable to foresee that a mailing might occur between a subsidiary lender and its parent or other subsidiaries upon the submission of a mortgage loan application and supporting documents to the subsidiary. Moreover, the allegations of Defendant's own motion state that the documents he submitted locally were initially "forwarded" to an entity known as DataFax for verification.  Motion, doc. no. 1 at 13. Regardless of whether or not the documents were actually mailed to DataFax, which was not charged in the Indictment, Defendant's understanding undercuts his contention that no mailing was foreseeable.  Accordingly, the Court concludes that it was reasonably

foreseeable that a mailing of the fraudulently produced documents would occur.

For all of the foregoing reasons, the Court finds that Defendant has not demonstrated his actual innocence of the crime of mail fraud. He is not entitled to have his procedurally defaulted claims challenging the voluntariness of his plea considered in the instant § 2255 motion. <u>Bousley</u>, 523 U.S. at 621-22. Accordingly, Claims One, Four, Five, and Six are DISMISSED.

### C. Claims Based on Ineffective Assistance of Counsel

Defendant alleges ineffective assistance of counsel in the following respects:

a.  Claim VII: Counsel allegedly did not adequately investigate Defendant's case, was not willing to proceed with trial, and coerced Defendant's decision to plead guilty;

b.  Claim VII: Counsel allegedly advised Defendant he could not ask the Court to withdraw his guilty plea at sentencing; and

c.  Claim VIII: Counsel failed to challenge the Court's jurisdiction on venue grounds.

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death

sentence resulted from a breakdown in the adversary process
that renders the result unreliable.

Although _Strickland_ involved a habeas petitioner's attack on his
state-court conviction and death sentence, the test for
ineffectiveness articulated by the Court also applies in collateral
attacks on noncapital sentences.   See _Glover v. United States_, 531
U.S. 198, 202-03 (2001)(reversing Seventh Circuit's determination
that counsel's error, resulting in a sentence of an additional six to
twenty-one months of prison, failed to satisfy the prejudice prong of
_Strickland_); _Arredondo v. United States_, 178 F.3d 778, 783 (6th Cir.
1999)(explaining, prior to _Glover_, that "[a]lthough the Supreme Court
has never expressly extended the _Strickland_ standard to noncapital
sentencing, we have applied it in that context.").

     To demonstrate deficient performance by counsel, a defendant
must demonstrate that "counsel's representation fell below an
objective standard of reasonableness." _Id._ at 688.

          Judicial scrutiny of counsel's performance must be
     highly deferential.  It is all too tempting for a defendant
     to second-guess counsel's assistance after conviction and
     adverse sentence, and it is all too easy for a court,
     examining counsel's defense after it has proved
     unsuccessful, to conclude that a particular act or omission
     of counsel was unreasonable. . . . A fair assessment of
     attorney performance requires that every effort be made to
     eliminate the distorting effects of hindsight, to
     reconstruct the circumstances of counsel's challenged
     conduct, and to evaluate the conduct from counsel's
     perspective at the time.  Because of the difficulties
     inherent in making the evaluation, a court must indulge a
     strong presumption that counsel's conduct falls within the
     wide range of reasonable professional assistance; that is,
     the defendant must overcome the presumption that, under the
     circumstances, the challenged action "might be considered
     sound trial strategy."

_Id._ at 689 (citation omitted); _see also_ _Coe v. Bell_, 161 F.3d 320,
342 (6th Cir. 1999)("The specifics of what Coe claims an effective

lawyer would have done for him are too voluminous to detail here. They also largely miss the point: just as (or more) important as what the lawyer missed is what he did not miss. That is, we focus on the adequacy or inadequacy of counsel's actual performance, not counsel's (hindsight) potential for improvement."); Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983)("a defendant 'has not been denied effective assistance by erroneous tactical decisions if, at the time, the decisions would have seemed reasonable to the competent trial attorney'")(citations omitted).

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness. Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697.

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)); see also Strickland, 466 U.S. at 686 ("The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."). "Thus analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Lockhart, 506 U.S. at 369.

In the context of a guilty plea, in order to demonstrate prejudice flowing from counsel's deficient performance, a petitioner must show that "there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

As to Defendant's allegation that counsel was ineffective for failing to challenge venue, Defendant has failed to demonstrate either deficient performance or prejudice. The proper venue for a mail fraud prosecution is any federal district in which the subject mailing originates, passes through, or is received. United States v. Wood, 364 F.3d 704, 711-12 (6th Cir. 2004). Count Three of the Indictment states that the subject mailing originated in the Western District of Tennessee. Defendant has done nothing to substantively refute this allegation other than to contend that the government failed to offer definitive proof that the mailing did indeed originate in the Western District. Because he cannot show that venue was improper in the Western District of Tennessee, Defendant has not

demonstrated defective performance by counsel for failing to lodge a frivolous challenge based on venue.

Defendant also contends that counsel improperly advised him that he could not request permission to withdraw his guilty plea at sentencing.  Defendant offers nothing more than the unsubstantiated and self-serving allegation that he was incorrectly advised.  At the sentencing hearing, Defendant was given an opportunity to be heard by the Court before the Court's sentencing.  Defendant did nothing to suggest to the Court any reluctance about his decision to plead or any wish to withdraw the plea.  Transcript, doc. no. 163 at 84.  His present allegations concerning his desire to withdraw the plea and his counsel's purportedly incorrect advice that he could not do so are entitled to little credence in the face of the record.  Defendant has failed to show prejudice flowing from counsel's alleged incorrect advice because he has not adequately demonstrated that the Court would have granted any putative motion to withdraw the guilty plea.  To withdraw his guilty plea at sentencing, Defendant would have been required to "show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Withdrawal is "appropriate where there is a real confusion or misunderstanding of the terms of the [plea] agreement;" it is not permitted simply to cure remorse in hindsight of a decision to plead guilty.  United States v. Ellis, 2006 WL 3421741 at *5 (6th Cir. Nov. 29, 2006).  Defendant has demonstrated no "real confusion or misunderstanding" of the terms of his plea agreement inhering at the time of his sentencing.  The Sixth Circuit has highlighted a number of non-

exclusive factors to be considered when evaluating whether a Defendant should be permitted to withdraw a guilty plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

Id. Defendant has not made a showing that any motion to withdraw would have been well-taken based on any of the criteria set forth in Ellis. Thus, Defendant has not demonstrated prejudice flowing from counsel's allegedly incorrect advice about the viability of withdrawing his plea of guilty.

Finally, Defendant contends that counsel was ineffective for failing to investigate his case adequately and prepare for trial, thus rendering his ultimate decision to plead guilty involuntary. Specifically, Defendant contends that had counsel

> investigated the facts in this case, he would have learned that there was no mailing as alleged in the indictment for count 3 and Byrd would not have plead [sic] guilty and been convicted of count 3. He would have also learned that Byrd could not foresee a mailing and knew nothing of a mailing and Byrd would not have been convicted on Count 3. [Counsel's] reluctance to spend any time researching the facts, discussing this case with Byrd, or preparing for trial renders Byrd's guilty plea involuntary because he would not have pleaded guilty otherwise.

Motion, doc. no. 1 at 24. Defendant has failed to demonstrate deficient performance or prejudice flowing from counsel's alleged inadequate investigation and preparation. Defendant has offered no proof other than his unsubstantiated and self-serving allegation "that there was no mailing as alleged" in Count Three of the

Indictment. Furthermore, as discussed above, the Court has already determined that it was reasonably foreseeable that a mailing involving the fraudulent documents Defendant prepared would occur under the circumstances inhering in this case. Accordingly, Defendant has failed to demonstrate ineffective assistance of counsel based on counsel's investigation and preparation before the entry of Defendant's guilty plea.

For all of the foregoing reasons, Defendant's various claims alleging ineffective assistance of counsel are without merit and are DENIED. Defendant's motion pursuant to § 2255 is DENIED.

**V. APPELLATE ISSUES**

Consideration must also be given to issues that may occur if Defendant files a notice of appeal. Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063, 1073 (6th Cir. 1997) (district judges may issue certificates of appealability under the AEDPA). No § 2255 movant may appeal without this certificate.

In Slack v. McDaniel, 529 U.S. 473, 483-84 (2000), the Supreme Court stated that § 2253 is a codification of the standard announced in Barefoot v. Estelle, 463 U.S. 880, 893 (1983), which requires a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to

deserve encouragement to proceed further.'" <u>Slack</u>, 529 U.S. at 484

(quoting <u>Barefoot</u>, 463 U.S. at 893 & n.4).

The Supreme Court recently cautioned against undue limitations

on the issuance of certificates of appealability:

> [O]ur opinion in <u>Slack</u> held that a COA does not require a
> showing that the appeal will succeed. Accordingly, a court
> of appeals should not decline the application of a COA
> merely because it believes the applicant will not
> demonstrate an entitlement to relief. The holding in <u>Slack</u>
> would mean very little if appellate review were denied
> because the prisoner did not convince a judge, or, for that
> matter, three judges, that he or she would prevail. It is
> consistent with § 2253 that a COA will issue in some
> instances where there is no certainty of ultimate relief.
> After all, when a COA is sought, the whole premise is that
> the prisoner "'has already failed in that endeavor.'"

<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (quoting <u>Barefoot</u>,

463 U.S. at 893). Thus,

> [a] prisoner seeking a COA must prove "'something more than
> the absence of frivolity'" or the existence of mere "good
> faith" on his or her part. . . . We do not require
> petitioners to prove, before the issuance of a COA, that
> some jurists would grant the petition for habeas corpus.
> Indeed, a claim can be debatable even though every jurist
> of reason might agree, after the COA has been granted and
> the case has received full consideration, that petitioner
> will not prevail.

<u>Id.</u> at 338 (quoting <u>Barefoot</u>, 463 U.S. at 893); <u>see also</u> <u>id.</u> at 342

(cautioning courts against conflating their analysis of the merits

with the decision of whether to issue a COA; "The question is the

debatability of the underlying constitutional claim, not the

resolution of that debate.").[2]

---

[2]     By the same token, the Supreme Court also emphasized that "[o]ur
holding should not be misconstrued as directing that a COA always must issue."
<u>Id.</u> at 337. Instead, the COA requirement implements a system of "differential
treatment of those appeals deserving of attention from those that plainly do
not." <u>Id.</u>

In this case, Defendant's claims are clearly without merit. Because he cannot present a question of some substance about which reasonable jurists could differ, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952.[3] Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if Defendant files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in

---

[3]   Effective April 9, 2006, the appellate filing fee increased to $455 from $255.

forma pauperis and supporting affidavit in the Sixth Circuit Court of

Appeals within thirty (30) days.

IT IS SO ORDERED this 22nd day of December, 2006.

S/   Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE